UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN F. TRURAN,

             Plaintiff,             Case No. 2:16-cv-10862
                                          District Judge Denise Page Hood
v.                                  Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

             Defendant.
_____/

### RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 23) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 19)

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 23), **DENY** Plaintiff's motion for summary judgment (DE 19), and

**AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, Kathleen F. Truran, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for social security disability insurance

benefits ("DIB"). This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

19), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 23), Plaintiff's reply (DE 24), and the administrative record (DE 15).

### A.    Background

In March 2012, Plaintiff filed an application for DIB, alleging she has been disabled since November 1, 2007.  (R. at 247-48.)   However, Plaintiff had previously filed a DIB claim that was denied on June 20, 2011, covering the time period from November 1, 2007 to June 20, 2011.  Accordingly, the relevant time period in this case is from June 21, 2011 to December 31, 2012, her date last insured.

Plaintiff's application was initially and upon reconsideration denied (R. at 170 and 176) and she sought a *de novo* hearing before an administrative law judge ("ALJ").  ALJ Joseph F. Dent held a hearing on April 9, 2014.  (R. at 72-112.)  On June 6, 2014, ALJ Dent issued an opinion which found Plaintiff to not be disabled. (R. at 42-53.)   The Appeals Council denied Plaintiff's request for review on January 8, 2016.  (R. at 1-4.)  ALJ Dent's decision thus became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

### B.      Plaintiff's Medical History and Hearing Testimony

Plaintiff suffers from a variety of physical and mental impairments, as well as a very difficult home life.  She was 54 years old at the time of the hearing.  She lived with her two sons in a single family home, but her oldest son was in the process of having her evicted.  (R. at 92.)  Her past relevant work was as a drafter of automobile design ("drafter") and office helper.  (R. at 102.)  The drafter job involved specialized training and certification.  She was laid off from the drafter job because there were issues with her performance, namely that she worked too slowly.  (R. at 90.)

### 1.      Physical Impairments

Plaintiff has struggled with hypothyroidism since 1995.  (R. at 48.)  She testified that the condition had not been "leveled or regulated in over five years." (R. at 79.)  Specifically, she noted that her dose of levothyroxine has gone up and down over the years.  (R. at 85.)  She presented to the Sarasota Memorial Hospital in March 2012 and the Sarasota County Health Department in April 2012, complaining of unregulated hypothyroidism.  (R. at 448 and 485.)  However, she also testified to working until 2007, despite having been diagnosed with hypothyroidism in 1995.  (R. at 90.)

Plaintiff testified to chronic fatigue syndrome and fibromyalgia. (R. at 79 and 86.)  Dora Chizea, M.D., Plaintiff's primary care physician, completed a

3

chronic fatigue syndrome questionnaire and opined that Plaintiff's chronic fatigue syndrome significantly limited much of her physical activity and prevented her from returning to her previous employment. (R. at 424-26.)  On August 2, 2012, she underwent a neurologic consultation with Alan B. Grindal, M.D., during which he diagnosed her with "possibl[e] fibromyalgia," and recommended a repeat MRI scan, but noted that she did not require "any neurologic intervention at this time." (R. at 518.)  There is no record that Plaintiff underwent a repeat MRI.  During the hearing, Plaintiff indicated that she experienced numbness and tingling in her whole body that impacts her ability to sit, stand, and lie down. (R. at 80-81.)  She began using a cane about a year before the hearing because she had difficulty with balance.  (R. at 83.)   Plaintiff explained that she had spasms and cramps at night. (R. at 87.)  She took Neurontin for pain.  (R. at 86.)

### 2.    Mental Impairments

Plaintiff also described her mental impairments of depression and anxiety. She explained that she had trouble concentrating and remembering things she had known for years, as well as the date or month.  (R. at 88.)  She mentioned that she would be unable to do her previous work as a drafter because the process is complicated, tedious, and would require her to maintain concentration for significant periods of time.  (R. at 89.)

Plaintiff underwent a consultative examination with Kenneth A. Visser, Ph.D., on May 30, 2012.  (R. at 437-445.)  Dr. Visser opined that Plaintiff had problems with memory and fatigue.  He described her as "tense," but noted that she spoke clearly and responded relevantly to questions.  He diagnosed her with post-traumatic stress disorder, generalized anxiety disorder, and major depression. (R. at 443.)  Dr. Conger, the State Agency reviewing psychologist, reviewed Dr. Visser's report and determined that Plaintiff's condition could result in some difficulties, but that she was mentally capable of performing routine tasks on a sustained basis.  (R. at 123.)

### C.      Vocational Expert's Testimony

Vocational Expert ("VE") Dr. Roth classified Plaintiff's prior work as a drafter of automobile design and office worker, both of which are performed at the light exertional level.  (R. at 102-103.)  The ALJ then asked the VE whether a person with Plaintiff's age, education, and work experience who is "limited to occasionally climbing ramps and stairs but never climbing ladders, ropes or scaffolds," could only occasionally balance, stoop, kneel, crouch, and crawl, and was "limited to simple, routine, repetitive work in a low stress job" at the light exertional level could perform Plaintiff's past relevant work.  (R. at 103-104.)  Dr. Roth answered in the affirmative, noting that her past job as an office worker was performed at the light level and was unskilled.  The VE also identified other jobs in

the national economy that the hypothetical individual could perform, including cashier, small parts assembler, and inspector/packer.  (R. at 104-105.)

The ALJ then added the limitations that the hypothetical individual was limited to frequent bilateral handling and fingering and only occasional interaction with the public.  (R. at 106.)  The VE testified that the individual could still perform Plaintiff's past relevant work as an office helper.  In addition, the individual could perform work as an inspector packer and carwash attendant.

The ALJ presented a third hypothetical, reducing the exertional level to sedentary and limiting the individual to low stress, simple, routine, repetitive, tasks with occasional interaction with the public.  (R. at 107.)  The VE testified that the individual would not be capable of Plaintiff's past relevant work, but could perform as an assembler, packer, or inspector.  (R. at 107-108.)  Adding the requirement that the job be performed while using a handheld assistive device for ambulation would not impact these jobs because they are all performed seated.  (R. at 108.)

Finally, the ALJ asked whether the individual could perform any jobs in the national economy if he or she was unable to engage in sustained work activity for a full eight hour work day.  The VE testified that this would preclude all work.  (R. at 108.)

**D.  The Administrative Decision**

In his June 6, 2014 decision, the ALJ first concluded that Plaintiff met the insured status requirements through December 31, 2012.  (R. at 44.)  At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 21, 2011.  (Id.)

At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  chronic fatigue syndrome ("CFS"); Hashimoto's thyroiditis/hypothyroidism; myalgias and arthralgias; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder; and anemia.  (R. at 44.)

At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

7

of impairments that met or medically equaled one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 45-47.)

Prior to undertaking Step 4, the ALJ evaluated Plaintiff's residual functional

capacity ("RFC")[2] and determined that she could perform light work,[3] with several

limitations, including only occasional climbing of ropes or stairs, never climbing

ladders, ropes, or scaffolds, and the limitation to simple, routine, and repetitive

work and only occasional interaction with the public.   (R. at 47.)   At **Step 4**, the

ALJ concluded that Plaintiff could perform her past relevant work as an office

helper.  (R. at 50.)  At **Step 5**, the ALJ concluded that Plaintiff was capable of

performing other jobs that exist in significant numbers in the national economy.

(R. at 51-52.)  The ALJ therefore concluded that Plaintiff was not disabled under

the Social Security Act.  (R. at 53.)

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

### E.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").  Furthermore, the claimant "has the ultimate burden to establish an entitlement to

benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F. ANALYSIS

Plaintiff advances two main arguments as to why the ALJ committed reversible error warranting remand. First, she asserts that the ALJ failed to

10

properly consider the impact of her fibromyalgia when assessing her RFC. Second, she contends that the ALJ failed to sufficiently analyze her mental impairments. I will devote a separate sub-section in this Report to each of these arguments.

### 1. Fibromyalgia

The ALJ concluded at Step 2 that Plaintiff's fibromyalgia was a non-severe impairment. (R. at 45.) He explained that, while Plaintiff was diagnosed by a neurologist with "possible fibromyalgia," the record did not contain evidence that a doctor had made the requisite finding of trigger points needed for an actual diagnosis of fibromyalgia. (Id.) He further pointed out that Plaintiff sought very little treatment for fibromyalgia and the findings from her physical examinations did not support the diagnosis.

Plaintiff takes issue with two of the ALJ's reasons for concluding that fibromyalgia is a non-severe impairment. First, she argues that the ALJ determined her impairment to be non-severe without considering the full range of options for making such a determination pursuant to Social Security Ruling 12-2p. Second, she asserts that the ALJ erred by not considering her lack of insurance when noting that she failed to seek treatment for fibromyalgia. I will consider each of her arguments in turn.

### a.     Analysis Under Social Security Ruling 12-2p

Plaintiff first asserts that, in making his determination at Step 2, the ALJ did not consider the full range of options for determining whether an individual has a medically determinable impairment ("MDI") of fibromyalgia under Soc. Sec. Ruling 12-2p. Specifically, she contends that it was in error for the ALJ to base his decision solely on the fact that none of her doctors made the "necessary findings of trigger points to diagnose fibromyalgia."  (R. at 45.)  She argues that, while trigger point testing is one option for assessing whether or not an individual has an impairment of fibromyalgia, it is not the only one, and asserts that the ALJ failed to consider the alternative tests described under Rule 12-2p.  She is correct that, in addition to the trigger point test, Rule 12-2p provides that the ALJ "*may* find that a person has an MDI of [fibromyalgia] if he or she has *all three* of the following criteria:"

> 1. A history of widespread pain (see section II.A.1.);
>
> 2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; *and*
>
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.).

Soc. Sec. Ruling, 12-2p*; Titles II & Xvi: Evaluation of Fibromyalgia*, SSR 12-2P,
2012 WL 3104869 (S.S.A. July 25, 2012) (emphasis added).

Nevertheless, Plaintiff's argument fails for three reasons.  First, the above
criteria are intended to ascertain whether the claimant's impairment is *medically
determinable*, not whether it is *severe*.  Soc. Sec. Ruling 12p (noting that the ALJ
"may find that a person has an *MDI* of [fibromyalgia] if he or she has all three of
the following criteria (emphasis added)).  In the instant matter, however, the ALJ
did not consider Plaintiff's fibromyalgia to be a non-medically determinable
impairment.  Instead, he considered it to be a *medically determinable but non-
severe impairment*, specifically noting that she had received a diagnosis of
"possible fibromyalgia."  (R. at 45.)

Second, and relatedly, to the extent that Plaintiff contends the ALJ did not
consider fibromyalgia to be a medically determinable impairment, that assertion is
incorrect.  To be considered a "severe" impairment at Step 2, the claimant must
have a "medically determinable impairment," that causes more than a "slight
abnormality." 20 C.F.R. § 416.924 (c). An impairment is "medically determinable"
when it "results from anatomical, physiological, or psychological abnormalities
which are demonstrable by medically acceptable clinical and laboratory diagnostic
techniques." 42 U.S.C. § 423(d)(3); see also S.S.R. 96-4p, 1996 WL 374187, at *1
(July 2, 1996) ("A 'symptom' is not a 'medically determinable physical or mental

impairment' and no symptom by itself can establish the existence of such an impairment."). Here, the ALJ considered her fibromyalgia and deemed it non-severe. By definition, therefore, a non-severe impairment is medically determinable, but causes less than a slight abnormality. 20 C.F.R. § 416.924.

Finally, the use of the criteria by the ALJ is permissive ("may find that a person . . . .") and, if utilized—in light of their conjunctive listing in the Ruling—all three criteria must be met. Even if the above represented the criteria to determine whether her fibromyalgia is a severe impairment at Step 2, she has not come forward with evidence to meet all three criteria. Specifically, she cannot point to evidence that other disorders that could cause pain, numbness, and fatigue were excluded. In fact, much of her purported evidence relies upon her diagnosis of chronic fatigue syndrome, which shares many of the same characteristics as fibromyalgia.

Moreover, to the extent Plaintiff contends that the ALJ erred at Step 2 in finding her fibromyalgia to be non-severe, any potential error is harmless because he considered her allegations of pain at Step 4, specifically noting that the objective evidence did not support her complaints of pain and numbness. (R. at 48.) He pointed to normal physical examinations, appointments in which she did not appear to be in acute distress, and reports that she did not experience muscle weakness or sensory loss. (R. at 48-49.) Accordingly, any error at Step 2 as to the

14

severity of Plaintiff's fibromyalgia was rendered harmless.  *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x. 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."), *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

### b.    Lack of Insurance

Likewise, Plaintiff's contention that the ALJ erred by failing to consider her lack of insurance when assessing the impact of her fibromyalgia is also unavailing. The ALJ did take note of the scant medical evidence in the record related to fibromyalgia, as well as her failure to seek treatment with a rheumatologist when

determining at Step 2 that fibromyalgia was a non-severe impairment.  An ALJ
may not draw:

> any inferences about an individual's symptoms and their functional
> effects from a failure to seek or pursue regular medical treatment
> without first considering any explanations that the individual may
> provide, or other information in the case record, that may explain
> infrequent or irregular medical visits or failure to seek medical
> treatment.

S.S.R. 96-7p, 1996 WL 374186, at *7.  For example, the ALJ should consider the
claimant's explanation where the individual "may be unable to afford treatment
and may not have access to free or low-cost medical services."  *Id.  See also
McKnight v. Sullivan,* 927 F.2d 241, 242 (6th Cir. 1990) (agreeing with the
conclusion that a "condition that is disabling in fact continues to be disabling in
law," when the claimant "cannot afford prescribed treatment or medicine and can
find no way to obtain it.") (internal quotation marks and citations omitted).  Here,
Plaintiff explains that "[h]er primary care provider was actually the Sarasota
County Health Department" and that she "*did* treat regularly for significant
problems that can clearly be attributed to her fibromyalgia," indicating that her
lack of insurance did not meaningfully impact her access to treatment.  (DE 19 at
15.) (emphasis in original.)  It was thus unnecessary for the ALJ to consider that
Plaintiff "may not have access to free or low-cost medical services," when in fact,
she did.  Soc. Sec. Ruling 96-7p.  Likewise, even if the ALJ's notation that she
failed to seek treatment with a rheumatologist (without considering her lack of

16

insurance) was in error, any such error was harmless because the ALJ did not rely on this fact alone when assessing Plaintiff's fibromyalgia. The ALJ's opinion was sufficiently clear—Plaintiff, despite having access to the Sarasota County Health Department—did not seek treatment for fibromyalgia after her possible diagnosis. (R. at 481-484.) In addition, he noted that the findings from the physical examinations did not support the diagnosis. (R. at 45.) The analysis provides an accurate and logical bridge between the evidence and the result, and there is substantial evidence in the record to support it. *See Pollacia v. Comm'r of Soc. Sec.*, No. 09-cv-14438, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011). For example, the ALJ gave great weight to the opinion of the State Agency reviewer, Shakra Junejo, M.D., who considered Plaintiff's diagnosis of fibromyalgia and still concluded that she was capable of performing work. (R. at 139.) The ALJ also pointed to a report that an examining neurologist concluded that she was not in acute distress and had no signs of muscle weakness or sensory loss. (R. at 457.) Accordingly, I find no reversible error in the ALJ's analysis of Plaintiff's fibromyalgia at Step 2.

## 2. Mental Impairments

Plaintiff asserts that the ALJ failed to consider the reports of Carol Gallegos, a social worker, and Dr. Visser, the consultative examiner, when assessing the impact of her mental impairments on her ability to work.

17

### a.   Ms. Gallegos

Ms. Gallegos completed a Treatment Intervention Inventory ("TTI") on October 4, 2012.  (R. at 511-15.)  She concluded that Plaintiff had severe problems related to anxiety, depression, stress coping, self-esteem, distress, and family issues.  Ms. Gallegos recommended that Plaintiff be seen for individual therapy to work on her dysthymic disorder, anxiety, and post-traumatic stress.  She further recommended weekly group therapy sessions and psychotherapy.  (R. at 511.)  The ALJ assigned little weight to Ms. Gallegos' opinion because: (1) it was based primarily on Plaintiff's self-reported complaints; (2) social workers are not acceptable medical sources; and (3) Plaintiff failed to follow her instructions for follow-up treatment.  (R. at 51.)  The ALJ instead afforded significant weight to the opinions of State Agency non-examining psychologists Drs. Conger and LaMarche, finding that their opinions were substantiated by medical evidence in the record.

Plaintiff argues that the ALJ improperly discounted Ms. Gallegos' opinion in favor of the opinions of two non-examining State Agency therapists.  While Plaintiff is correct that reports from social workers can be considered by the ALJ, social workers are not considered acceptable medical sources under the regulations.  *See Boyett v. Apfel*, 8 F. App'x 429, 433 (6th Cir. 2001); 20 C.F.R. §

404.1513(a).[4]  Accordingly, even though Ms. Gallegos saw Plaintiff once and the

reviewing therapists did not, her opinion is not entitled to any higher level of

deference.[5]  The ALJ was therefore only required to consider the opinion, which he

did.  (R. at 51); *see* S.S.R. 12-2p.  He also gave good reasons for discounting the

opinion, concluding that it was largely based off of Plaintiff's subjective reports.

This is a valid reason for discounting the opinion of even a treating physician.  *See*

*Cohen v. Sec'y of Dep't of Health & Hum. Servs.*, 964 F.2d 524, 529 (6th Cir.

1992) (noting that the ALJ "was not bound to accept as credible [the claimant's]

own testimony regarding her symptoms.");*Morin v. Comm'r of Soc. Sec.*, No. 10-

13040, 2012 WL 1004787, at *2 (E.D. Mich. Mar. 26, 2012) (finding that the

ALJ's decision to discount the opinion of a treating physician was supported by

substantial evidence where it was "based  heavily on the subjective reports" of the

plaintiff); *Ditz v. Comm'r of Soc. Sec.*, No. 08-11547, 2009 WL 440641, at *13

(E.D. Mich. Feb. 20, 2009) ("[T]he ALJ is permitted to discount any such treating

[4] This provision was revised as of March 27, 2017.  Any references to acceptable medical sources will therefore be to the version of the regulations which was in place at the time of the ALJ's opinion and isconsistent with the parties' briefing.

[5] Plaintiff appears to be asking the Court to treat Ms. Gallegos' opinion as that of a treating physician.  Not only is this improper because, as noted above, social workers are not considered acceptable medical sources, Plaintiff also concedes that she only saw Ms. Gallegos once.  The Sixth Circuit has explained that one visit cannot be the entire basis for a treating source relationship, and, in some instances, even two or three visits will not suffice.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506-07 (6th Cir. 2006).

19

physician opinion if it is based on claimant's subjective reports and the ALJ has sufficient reasons to discount the claimant's credibility.").  In the instant case, the ALJ had discounted Plaintiff's credibility, a finding that Plaintiff does not directly challenge.  Accordingly, the ALJ did not err in assigning little weight to the opinion of Ms. Gallegos.

### b.    Dr. Visser

Likewise, the ALJ did not err in his analysis of Dr. Visser's report.  Dr. Visser examined Plaintiff on May 21, 2012 and found that she had had problems with memory, concentration, persistence, pace, ability to adapt, and the ability to understand and follow instructions.  (R. at 444.)  Plaintiff asserts that the ALJ failed to consider this opinion, which supports her testimony that she had problems with memory and concentration.  First, the ALJ did address Dr. Visser's report, both at Step 2 and Step 4.  At Step 2, he concluded that Plaintiff had moderate difficulties in the areas of social functioning and concentration, persistence, and pace, as a result of Dr. Visser's report.  (R. at 46.)  At Step 4, he compared Plaintiff's behavior in front of Dr. Visser, who was conducting his evaluation for the purpose of the disability process, to that of her behavior in front of her treating physicians.  Specifically, Plaintiff brought a recorder to her examination, her leg shook, and she alternated between sitting and standing.  (R. at 49.)  In contrast, her

other examining physicians during this time frame did not note similar behavior. (Id., R. at 457, and 461.)

Accordingly, the ALJ properly considered Dr. Visser's findings.  Moreover, the RFC reflects Dr. Visser's findings, because the ALJ limited Plaintiff to performing simple, routine, and repetitive work in a low stress job and only occasional interaction with the public.  This takes into account her problems with memory and concentration.  (R. at 47.) *See Bohn-Morton v. Commissioner of Social Security*, 389 F. Supp. 2d 804, 805-07 (E.D. Mich. 2005); *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010)(noting that "[d]ecisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work.").

Although, as Defendant concedes, it would have been "preferable for the ALJ to explicitly assign a specific weight to Dr. Visser's opinion," his failure to do so was, at most, harmless error. The Sixth Circuit's analysis in *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463 (6th Cir. 2004) is illustrative.  There, the court considered an Eighth Circuit opinion holding that it was merely harmless error for the ALJ to cite to only one part of a treating physician's opinion and to not spell out the weight to which it was assigned.  *Craig v. Apfel*, 212 F. 3d 433, 436 (8th Cir. 2000).   In analyzing the opinion of a consultative examiner, as in the

21

instant matter, the Sixth Circuit reasoned that, because those opinions are "usually entitled to less weight than that of a treating physician . . . the ALJ's failure in the present case to discuss thoroughly the opinion of a consultative examiner does not warrant reversal." *Dykes*, 112 F. App'x at 468.  As in the instant case, the ALJ in *Dykes* made references to the reports of the consultative examiner, but ultimately based the RFC on the opinions of other individuals.  As such, I conclude that the ALJ did not commit reversible error in his consideration of Dr. Visser's reports.

### G.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits to Plaintiff. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 19), **GRANT** Defendant's motion for summary judgment (DE 23), and **AFFIRM** the Commissioner of Social Security's decision.

### III.  PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 27, 2017                    s/Anthony P. Patti
                                        Anthony P. Patti
                                        UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on June 27, 2017, electronically and/or by U.S. Mail.

                                        s/Michael Williams
                                        Case manager to the
                                        Honorable Anthony P. Patti

23